**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CYNTHIA JONES,<br>8908 Loughran Terrace<br>Fort Washington, MD 20748<br><br>Plaintiff,<br><br>v.<br><br>JEH JOHNSON, SECRETARY<br>U.S. Department of Homeland Security<br>3801 Nebraska Avenue, N.W.<br>Washington, DC 20016<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiff, Cynthia Jones, by way of her attorney, Morris E. Fischer, Esq., hereby

states the following complaint, on information and belief formed after reasonable inquiry

under the circumstances, against Defendant:

**PARTIES**

1. Plaintiff, Cynthia Jones, is an individual citizen and resident of Prince Georges

   County, Maryland.

2. Plaintiff, at all times relevant hereto, is an employee of Defendant.

3. Defendant, Jeh Johnson, in his official capacity of Secretary, U.S. Department of

   Homeland Security.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims

   arising under federal law, e.g., The Rehabilitation Act of 1973, as amended, § 501

   et seq.

1

5.  At all times relevant to this case, Defendant is a federal agency subject to The Rehabilitation Act of 1973, as amended, § 501 et seq.

6.  Venue is vested in this Court, since the facts giving rise to this case took place in the District of Columbia.

## EXHAUSTION OF REMEDIES

7.  Plaintiff has exhausted all of her administrative remedies.

8.  On December 28, 2011, Plaintiff timely contacted an EEO counselor complaining about her supervisor creating a hostile work environment.

9.  On January 6, 2012, Plaintiff timely filed her formal complaint with the EEO Counselor.

10. On April 2, 2012, Plaintiff amended her EEO complaint be amended to reflect her supervisor denying Plaintiff's request for a reasonable accommodation.

11. In Plaintiff's case before the Equal Employment Opportunity Commission, the Administrative Law Judge denied Defendant's Motion for Summary Judgment.

12. Plaintiff elected to withdraw her case before the EEOC and to file same in federal court.

## FACTS

13. Plaintiff has been an employee of Defendant's agency, U.S. Customs and Border Protection (CBP), since May 5, 2003.

14. Plaintiff is a Human Resources Assistant (HRA), GS-0203-08, assigned to the Human Resources Operations Programs and Policy (HROPP) division, Office of Human Resources Management (HRM) Headquarters, Washington, DC.

15. Plaintiff has a physical disability as she suffers from Fibromyalgia, a chronic condition, causing pain and tenderness in the muscles and soft tissues, affecting shoulders, back, chest, hips, buttocks, arms and leg.

16. Plaintiff's pain may be worse in the morning and evening and sometimes the pain may occur all day long.

17. The pain can increase with activity, cold or damp weather, anxiety and stress.

18. On June 27, 2011, Norma Valdes became Plaintiff's supervisor.

19. On August 31, 2011, Plaintiff complained about discrimination caused by Norma Valdes to the Office of Internal Affairs.

20. On December 15, 2011, Plaintiff emailed Valdes requesting sick leave for December 12-14, as a result of her being rushed to a hospital by ambulance and being incapacitated at home.

21. Instead of granting the leave, later that day, Ms. Valdes issued a letter, reminding Plaintiff of the leave policy.

22. On December 28, 2011, Plaintiff contacted an EEO Counselor, complaining about Ms. Valdes.

23. On December 28, 2011, Plaintiff requested leave under the Family Medical Leave Act.

24. On January 3, 2012, Valdes denied Plaintiff's request for a four day per week, ten hours per day work week, with one day for telecommuting.

25. On January 4, 2012, the EEO Counselor contacted Ms. Valdes regarding the allegations.

26. On January 6, 2012, Plaintiff filed her formal complaint with the EEO Counselor.

27. On February 9, 2012, Valdes denied FMLA to Plaintiff contending that Plaintiff's physician did not state enough facts to justify the leave.

28. On February 29, 2012, Plaintiff's doctor, Dr. Ghazala Shah, issued a medical diagnosis and report to the CBP Office of Diversity and Civil Rights detailing Plaintiff's condition in that she cannot lift more than 12 pounds, has constant pain, and a 40%-70% limitation due to the fluctuation of her pain.

29. Dr. Shah's report requested a four day per week, ten hours per day work schedule ("10/4") that would allow Plaintiff to get through the course of the week.

30. Dr. Shah's report wrote, "Recommended accommodations would be for Plaintiff to work a reduce schedule as tolerate."

31. A major reason for the reduced, 10/4 work schedule was to reduce Plaintiff's commute to and from the office because Plaintiff would be susceptible to bumpy car rides and stressful traffic jams all of which could increase the symptoms of her fibromyalgia.

32. Plaintiff' pain medications were generally prescribed to be taken every day or a higher dose as needed.

33. There would be certain days where Plaintiff' symptoms might be greater than that which her typical daily pain medications could treat.

34. In such a case, Plaintiff would be able to take a higher dosage of these pain medications which could cause drowsiness.

35. If one of those days of excessive pain occurred on a work day, thereby causing Plaintiff to take an extra dosage of medication, she would be benefited by taking a short nap during the day.

36. Staying at home would help Plaintiff in that regard.

37. Dr. Shah referred Plaintiff to rheumatology physician Dr. Imelda Cabalar.

38. On April 3, 2012, in a letter to the CBP Office of Diversity and Civil Rights, Dr. Cabalar diagnosed Plaintiff, confirming again the fibromyalgia, which causes chronic pain.

39. Plaintiff requested telework only one day per week and under the accommodation would be in the office three days per week.

40. Lisa Frank, Plaintiff's co-worker, was allowed to telework.

41. On March 15, 2012, Valdes said to Plaintiff, "Cynthia, Lisa Frank has been off work quite a bit, so with you and her having this *thing* going on with you all's health, I need *you* (Plaintiff) here in the office."

42. Also on March 15, 2014, Valdes said to Plaintiff, "Cynthia, you look fine to me, you don't look sick."

43. Another comment on March 15, 2014, Valdes made to Plaintiff, "Cynthia, what are you going to do about your job, with this *thing* you have?

44. Finally, a third comment made by Valdes to Plaintiff on March 15, 2014, "Cynthia, I get headaches too, my back hurts too, I sometimes can't get out the bed, the lights bother my eyes too."

45. Ms. Frank also had a similar disability, and brought a similar claim against Valdes.

46. Ms. Frank's matter was ultimately settled after the ALJ denied summary judgment to the Agency.

47. On March 26, 2012, Valdes issued Plaintiff a three page letter stating her reasons for denying Plaintiff's request for a 10 hour 4 day work week.

48. Valdes' March 26, 2012 letter substantiated Plaintiff's disability claim.

49. Valdes' March 26, 2012 letter listed three reasons for denying Plaintiff' reasonable

accommodation request in bulleted format:

> • Most of your work assignments, conducted on a regular
> basis, are not portable.
>
> • An important and regular part of your job is to prepare the
> packages for Congressional responses. Because these
> packages often require immediate turn around and because
> you are responsible for monitoring the progress of the
> packages to assure proper review and response in
> accordance with deadline that HRM does not set, your
> presence in the office every weekday during core hours is
> critical.
>
> • Finally, in accordance with your position description of a
> Human Resources  Assistant (OA) (GS-0203-08), one of
> your major duties and responsibilities is to assist me, HR
> specialists, and others personally, by performing segments
> of the work and by participating on projects on a deadline
> driven  schedule, which also requires you to be on site.

50. Valdes' March 26, 2012 letter also mentioned that Plaintiff had to answer phones

and assist the staff.

51. Valdes' March 26, 2012 letter made absolutely no mention of any leave policy

which prohibited Plaintiff from being denied telework.

52. Valdes' March 26, 2012 letter did not list specific work assignments that were not

portable.

53. Valdes' March 26, 2012letter did not list a single, deadline driven assignment

requiring Plaintiff to be present in the office.

54. On April 2, 2012, Plaintiff requested that her EEO complaint be amended to reflect

the     reasonable     accommodation     denial     to     Scott     Seaborn,     the     EEO

specialist/investigator assigned to the case.

55. Also, on April 2, 2012, Plaintiff renewed her reasonable accommodation request to Ms. Valdes, explaining that the accommodation proposed by Ms. Valdes would leave Plaintiff in part-time status and take away her health insurance.

## A. Essential Functions of Plaintiff's Position

### i. Federal Career Service Award Certificates

56. Plaintiff's main duty is to process Federal Career Service Award Certificates.

57. Federal Career Service Award Certificates are due once a month.

58. Wanda Walters, a management program analyst, has worked in the program management division running the awards program for twenty years.

59. Since 2011, Ms. Walters has been in charge of the CPB HR awards program.

60. Walters reviews background information in packages to make sure years of service are correct before awarding the certificate.

61. Once a month, Plaintiff brings the packages for the career awards from her division, HROPP, to Walters.

62. Walters will either give the packages back to Plaintiff or to coworker Laura Roberts.

63. Other than the once a month physical transport of the packages, Plaintiff was not responsible for anything else associated with the career service awards.

64. Most of the career service awards preparation can be done through email.

65. The only task associated with career service awards preparation that cannot be done from home is printing, which can be done on a day that Plaintiff is at the office.

66. Plaintiff's weekly reports are completed through email.

67. Plaintiff generally completes her daily work in four to five hours.

### ii. Congressional Correspondence

68. Plaintiff sends correspondence from the program management division within HROPP to respond to congressional correspondence.

69. Plaintiff forwards requests from the congressional affairs office to the appropriate subject matter expert.

70. Plaintiff essentially forwards emails with the congressional requests.

71. Plaintiff's Congressional correspondence is all done electronically.

## B. Non-essential duties

### i. Phone Answering

72. Raymond Feliciano is the assistant to Cassandra Graves, Executive Director, Human Resources operations programs and policy.

73. One of Feliciano's duties is to answer the phone.

74. On April 22, 2012, Plaintiff was tasked with backing up Feliciano to answer the phone.

75. Two other employees, Yvette Jackson and Pamela Wong, also served as backups to Feliciano and answered the phone.

76. Jackson answers the phones when Feliciano is out, which is rare, and Plaintiff takes turns with Yvette Jackson and Pamela Wong.

## COUNT I
## DISCRIMINATION IN THE FAILURE TO ACCOMMODATE DISABILITY

77. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

8

78. The Rehabilitation Act of 1973, as amended, § 501 (g) provides:

> The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201- 12204 and 12210), as such sections relate to employment.

79.  Plaintiff is a "qualified individual" as defined by the title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.), "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

80. Plaintiff is able to perform the essential functions of her position, as defined by 29 CFR 1630.2, with or without accommodation.

81. Plaintiff requested a reasonable accommodation from Defendant when she requested a four day per week, ten hours per day work schedule.

82. Defendant failed to provide the accommodation Plaintiff requested.

83. It was not an undue hardship to grant said accommodation.

84. Defendant's failure to provide a reasonable accommodation constituted discrimination in violation of The Rehabilitation Act of 1973, as amended, § 501 et seq.

85. Defendant discriminated against Plaintiff when Defendant denied Plantiff's request for advanced sick leave and placed Plaintiff on restricted leave status.

86. Defendant discriminated against Plaintiff, when Defendant failed to respond to Plaintiff's request for leave under the Family Medical Leave Act (FMLA), submitted December 28, 2011.

## **PRAYERS FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court enter judgment against Defendant and:

87. The aforesaid reasonable accommodations;

88. Award Plaintiff $300,000 in damages;

89. Award Plaintiff her attorney's fees and costs of suit; and

90. Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

_____/s/_____

Morris E. Fischer, Esq.
1400 Spring Street
Ste. 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
morris@mfischerlaw.com
Counsel for Plaintiff

## **JURY DEMAND**

Plaintiff herein demands a jury for all issues to be tried in this case.


Respectfully Submitted,

_____/s/_____
Morris E. Fischer, Esq.
1400 Spring Street
Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
 Attorney for Plaintiff